UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X    Docket No.: 1:21-cv-09125-AJN-JLC

JEFFREY CRAIG,

                Plaintiff,

        v.

AMERICAN TUNA, INC.,

                Defendant.

-------------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AMERICAN TUNA, INC.'S MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(A) AND FRCP 12(b)(3) AND MOTION TO DISMISS THE CLAIMS OF THE NEW YORK SUBCLASS, AND CAUSES OF ACTION II AND III UNDER FRCP 12(b)(6)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     INTRODUCTION ................................................................8

II.    BACKGROUND ...............................................................8

    A.     The Parties .................................................................8

    B.     Plaintiff's Allegations and Subclass Definitions ......................................9

    C.     Additional Facts Supporting Transfer ................................................11

        1.     American Tuna's Business ........................................11

        2.     Location of American Tuna Witnesses and Personnel ..............................12

        3.     Location of American Tuna Books and Records ......................................13

        4.     Location of Third Party Witnesses ................................................14

            a.     Fishermen Witnesses ........................................14

            b.     Packing and Auditing Witnesses ....................................15

            c.     Sales Witnesses ................................................16

III.   THIS ACTION SHOULD BE TRANSFERRED TO THE
SOUTHERN DISTRICT OF CALIFORNIA ................................................16

    A.     Legal Standard ................................................16

    B.     This Action Could Have Been Brought in the
Southern District of California ................................................18

    C.     The 1404(a) Factors Favor Transfer to the
Southern District of California ................................................18

        1.     Convenience of Witnesses Weighs in Favor of Transfer ..........................18

        2.     Convenience of the Parties Weighs in Favor of Transfer ..........................21

        3.     Location of the Evidence Weighs in Favor of Transfer ............................22

        4.     The Locus of Operative Facts Weighs in Favor of Transfer ....................23

## <u>TABLE OF CONTENTS (CONT.)</u>

<u>Page</u>

5. The Availability of Process to Compel the Attendance of Unwilling Witnesses Favors Transfer..........................................................25

6. The Relative Means of the Parties is Neutral..............................................25

7. The Forum's Familiarity with the Governing Law is Neutral ..................25

8. The Plaintiff's Choice of Forum is Neutral or Irrelevant .........................26

IV.  PLAINTIFF'S CLAIMS BROUGHT ON BEHAL OF THE NEW YORK SUBCLASS, FOR NEGLIGENT MISREPRESENTATION, AND FOR UNJUST ENRICHMENT SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(6)..........................................................................................................27

A. The Claims of the New York Subclass Must Be Dismissed, Because Plaintiff is Not a Member of the Class..................................................27

B. Plaintiff's Claim for Negligent Misrepresentation Must Be Dismissed Because There is No Special Relationship ...........................................29

C. Plaintiff's Unjust Enrichment Claims Must Be Dismissed...................31

V.  CONCLUSION............................................................................................32

# **TABLE OF AUTHORITIES**

Page

_**Cases**_

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*
    404 F.3d 566 (2d Cir. 2005) ............................................................................... 29

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*
    457 F.Supp.2d 474 (S.D.N.Y. 2006) ................................................................. 25

*Anschutz Corp. v. Merrill Lynch & Co.*
    690 F.3d 98 (2d Cir. 2012) ................................................................................. 29

*Armstrong v. Costco Wholesale Corp. & Nice-Pak Prod., Inc.*
    234 F.Supp.3d 367 (E.D.N.Y. 2017) ................................................................. 27

*Bentley v. Verizon Bus. Glob., LLC*
    No. 07 CIV. 9590 (DC), 2010 WL 1223575 (S.D.N.Y. Mar. 21, 2010) ..................... 26, 28

*Berman v. Informix Corp.*
    30 F.Supp.2d 653 (S.D.N.Y. 1998) ................................................................... 26

*Bernal v. Du Pont De Nemours E.I. and Corp.*
    No. 93 Civ. 1639 (PKL), 1993 WL 378790 (S.D.N.Y. Sept. 24, 1993) ........................ 21

*Blass v. Cap. Int'l Sec. Grp.*
    No. 99-CV-5738 (FB), 2001 WL 301137 (E.D.N.Y. Mar. 23, 2001) ............................ 22

*Corsello v. Verizon N.Y., Inc.*
    18 N.Y.3d 777, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012) ............................ 31

*CYI, Inc. v. Ja-Ru, Inc.*
    913 F.Supp.2d 16 (S.D.N.Y. 2012) ................................................................... 23

*De Jesus v. Nat'l R.R. Passenger Corp.*
    725 F.Supp. 207 (S.D.N.Y. 1989) ..................................................................... 21

*Ebin v. Kangadis Food Inc.*
    No. 13-CV-2311, 2013 WL 6504547 (S.D.N.Y. Dec. 11, 2013) ....................... 32

*Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*
    260 F.Supp.3d 401 (S.D.N.Y. 2017) ................................................................. 17

## TABLE OF AUTHORITIES (CONT.)

Page

**_Cases_**

_Everlast World's Boxing Headquarters Corp. v. Ringside, Inc._
    928 F.Supp.2d 735 (S.D.N.Y. 2013)...................................................................17, 18, 20

_Forsher v. J.M. Smucker Co._
    No. 15CV7180RJDSMG, 2019 WL 235639 (E.D.N.Y. Jan. 16, 2019)...........................24

_Freeman v. Hoffmann-La Roche Inc._
    No. 06CIV13497(RMB)(RLE), 2007 WL 895282  (S.D.N.Y. Mar. 21, 2007)................21

_Herbert Ltd. P'ship v. Elec. Arts Inc._
    325 F.Supp.2d 282 (S.D.N.Y. 2004).............................................................................17

_Horanzy v. Vemma Nutrition No._
    87 F.Supp.3d 341 (N.D.N.Y. 2015)..............................................................................24

_In re Flag Telecom Holdings, Ltd. Sec. Litig._
    574 F.3d 29 (2d Cir. 2009)............................................................................................28

_In re Hanger Orthopedic Grp., Inc. Sec. Litig._
    418 F.Supp.2d 164 (E.D.N.Y. 2006) .............................................................18, 20, 21, 22

_In re Nematron Corp. Secs. Litig._
    30 F.Supp.2d 397 (S.D.N.Y. 1998) ........................................................................22, 25

_In re Time Warner Inc. Sec. Litig._
    9 F.3d 259 (2d Cir. 1993)..............................................................................................30

_In re Warrick_
    70 F.2d 736 (2d Cir. 1995).............................................................................................27

_In re WorldCom, Inc._
    358 B.R. 585 (Bankr. S.D.N.Y. 2006).....................................................................28, 29

_Inventel Prod. LLC v. Penn LLC_
    No. 16-CV-1649(AJN), 2017 WL 818471 (S.D.N.Y. Feb. 28, 2017)..................21, 26, 27

_Kimmell v. Schaefer_
    89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996)...............................................30

# TABLE OF AUTHORITIES (CONT.)

Page

## *Cases*

*Levy v. Welsh*
    No. 12-CV-2056 (DLI)(VMS), 2013 Wl 1149152 9 (E.D.N.Y. Mar. 19, 2013) .............27

*Martin v. Ford Motor Co.*
    292 F.R.D. 252 (E.D. Pa. 2013)........................................................................28

*Newman v. RCN Telecom Servs., Inc.*
    238 F.R.D. 57 (S.D.N.Y. 2006) ........................................................................29

*Oleg Cassini, Inc. v. Serta, Inc.*
    No. 11 CIV. 8751 PAE, 2012 WL 844284 (S.D.N.Y. Mar. 13, 2012)...........................22

*Pausch Medical GmBH v. Pausch LLC*
    No. 14-cv-1945 (PAC), 2015 WL 783365 (S.D.N.Y. Feb. 24, 2015) ..............................26

*Peroutka v. Yeti Coolers, LLC*
    No. 18CV6827AMDCLP, 2020 WL 1283148 (E.D.N.Y. Mar. 17, 2020).................23, 24

*Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*
    980 F.2d 110 (2d Cir.1992).............................................................................17

*Ritchie Cap. Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*
    No. 14 CIV 8513 PAE, 2015 WL 1611391 at *4-5 (S.D.N.Y. Apr. 10, 2015)...............20

*Robidoux v. Celani*
    987 F.2d 931 (2d Cir. 1993)............................................................................28

*Segedie v. Hain Celestial Grp., Inc.*
    No. 14-CV-5029, 2015 WL 2168374 (S.D.N.Y. May 7, 2015) .......................................30

*Schlesinger v. Reservists Comm. to Stop the War*
    418 U.S. 208 (1974)......................................................................................28

*Stoltz v. Fage Dairy Processing Indus., S.A.*
    No. 14-CV-3826 MKB, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) .............23, 31, 323

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*
    250 F.3d 87 (2d Cir. 2001)...............................................................................30

# TABLE OF AUTHORITIES (CONT.)

Page

### *Cases*

*Van Dusen v. Barrack*
    376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)........................................17

*Viacom Int'l, Inc. v. Melvin Simons Prods.*
    774 F.Supp. 858 (S.D.N.Y. 1991) ..................................................................18

*Weisblum v. Prophase Labs, Inc.*
    No. 14-CV-3587, 2015 WL 738112 (S.D.N.Y. Feb. 20, 2015).........................31

*Wilson v. DirectBuy, Inc.*
    821 F.Supp.2d 510 (D. Conn. 2011) ...............................................................26

*Wyler-Wittenberg v. MetLife Home Loans, Inc.*
    899 F.Supp.2d 235 (E.D.N.Y 2012) ...............................................................17

*Zaltz v. JDATE*
    952 F.Supp.2d 439 (E.D.N.Y. 2013) ...............................................................23

### *Statutes & Rules*

Federal Rule of Civil Procedure 12(b)(6) .......................................................8, 27, 28, 29, 31, 32
Federal Rule of Civil Procedure 23(a)...........................................................................26, 28
Federal Rule of Civil Procedure 23(a)(3) .............................................................................28
Federal Rule of Civil Procedure 23(b)(2) .............................................................................10
Federal Rule of Civil Procedure 23(b)(3) .............................................................................10
Federal Rule of Civil Procedure 30 ......................................................................................25
Federal Rule of Civil Procedure 45 ......................................................................................25

28 U.S.C. § 1391(b)(1) .........................................................................................................18
28 U.S.C. § 1391(c)(2)..........................................................................................................18
28 U.S.C. § 1404(a) ...............................................................................16, 17, 18, 27, 32
28 U.S.C. § 84(d) ..................................................................................................................18

New York General Business Law § 349................................................................................26
New York General Business Law § 350................................................................................26

### *Other Authority*

Wright & Miller, Fed. Prac. & Proc. Civ., The Representatives Must Be
Members of the Class, 7A § 1761 (4th ed.) .........................................................................28

# I.

## <u>INTRODUCTION</u>

Plaintiff Jeffrey Craig is a New Jersey resident who seeks to represent a class of New York residents, as well as a nationwide class, in this action filed in the Southern District of New York.   Defendant American Tuna, Inc. is a California corporation, based in San Diego, California, and is in the business of selling canned albacore tuna, primarily in Whole Foods grocery stores throughout the country.   As will be discussed below in detail, the list of connections between this litigation and California is long and significant, while the connections with New York are essentially non-existent.   Notable among the factors motivating in favor of transfer are that nearly all of the non-party and party witnesses are located in California, Washington, Oregon, or the United Kingdom.   Not even the Plaintiff resides in New York.   The evidence strongly favors transfer of venue to the Southern District of California.

In addition, several of the claims in the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6).   The claims of the New York Subclass, made up of New York residents, must be dismissed because Plaintiff is not even a member of the class.   Moreover, the claims for negligent misrepresentation and unjust enrichment fail to make out viable causes of action under New York law, and accordingly must also be dismissed.

# II.

## <u>BACKGROUND</u>

### A.   <u>The Parties</u>

American Tuna, Inc. ("American Tuna") is a California corporation with its principal place of business in San Diego County, California.   Plaintiff's Complaint, ECF No. 1 ("Com."), ¶ 16; Declaration of John Burton ("Burton Decl."), ¶ 3.   According to the Complaint, American

Tuna sells tuna products "throughout the United States in major retail stores such as Whole Foods, Walmart and Stop & Shop, and through online retailers including Amazon."  Com., ¶ 17. The Complaint also alleges that American Tuna advertises and sells its products "nationwide, including New York."  Com., ¶ 18.

Plaintiff Jeffrey Craig is a resident of Bergen County, New Jersey.  Com. ¶ 15.

### B.       Plaintiff's Allegations and Subclass Definitions

Plaintiff's Complaint alleges that American Tuna brand products (defined as "American Tuna Products") are labeled using language that states or suggests they are caught in "American waters"[1] and canned in America.  Com. ¶¶ 5-7.  The labels on the cans of American Tuna Products contain statements such as "Caught and Canned in the USA," "Caught and Canned in America," "American Made," or "100% American Made."  Com. ¶ 7.  According to Plaintiff, however, these products are supposedly caught in international waters or the territorial waters of other countries, and canned outside of the United States, in places such as Thailand, Costa Rica, and Vietnam.  Com. ¶ 7.  Plaintiff also alleges American Tuna's website contains additional language, such as statements the products are "premium quality" and from the "American Pacific Northwest," which are allegedly incorrect.  Com., ¶¶ 8, 22.

Plaintiff alleges that he regularly purchased American Tuna Products "over the last several years from various supermarkets throughout New York State."  He generally claims that American Tuna products are sold at a premium due to their U.S. country of origin labeling, and asserts that he bought them in reliance on that labeling and American Tuna's marketing.  Com., ¶¶ 19, 29.  He alleges that if he had known the products were not from the United States, he would not have paid a premium.  Com., ¶ 19.

---

[1] Nowhere does the Complaint define what is meant by "American waters."

Plaintiff asserts this Court has jurisdiction under diversity jurisdiction and the Class Action Fairness Act.  Com., ¶ 13.  Plaintiff, a resident of New Jersey, alleges that venue is proper in the Southern District of New York because he purchased "Defendant's products" in New York County and Westchester County.  Com., ¶ 14.

In addition to his individual claims, Plaintiff seeks to certify two subclasses of similarly allegedly situated class members under Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3).  Com., ¶¶ 34, 42-43.  Plaintiff defines a Nationwide and New York subclasses as follows:

> The Nationwide Class
> All persons residing in the United States and its territories who purchased American Tuna Products during the applicable limitations period primarily for personal, family, or household purposes, and not for resale.

> The New York Class
> All persons *residing in New York* who purchased American Tuna Products during the applicable limitations period primarily for personal, family, or household purposes, and not for resale.

Com., ¶ 34 (emphasis added).[2]

Plaintiff's Complaint contains six causes of action for (1) Breach of Express Warranty, (2) Negligent Misrepresentation, (3) Unjust Enrichment, (4)-(5) Violations of New York General Business Law § 349, and (6) Violation of New York General Business Law § 350.  Com., ¶¶ 46-91. While the first three common law causes of action are brought on behalf of all class members, Causes of Action Four, Five, and Six, under the New York General Business Law, are brought only on behalf of the New York Subclass.[3]

---

[2] These two subclasses will be referenced throughout this Motion as the "Nationwide Subclass" and the "New York Subclass" as appropriate.
[3] While Causes of Action Five and Six clearly state the claim is brought on behalf of the "New York Subclass," Cause of Action Four only states it is brought on behalf of the "Subclass." These appear to refer to the same thing—the New York Subclass.

C.      **Additional Facts Supporting Transfer**

1.      **American Tuna's Business**

As explained in the Declaration of American Tuna's Chief Executive Officer, John Burton, American Tuna is in the business of supplying responsibly sourced, canned, and packaged tuna. Product sold as the American Tuna brand is certified as being sustainable by the Marine Stewardship Council ("MSC") and is labeled as "Certified Sustainable Seafood MSC." The company sells a variety of fish products under different brand names, including the American Tuna brand, the Pole & Line brand, a number of retailer private label brands, and a line of cat food products. Burton Decl., ¶ 7.

The American Tuna brand product contains albacore tuna caught exclusively in the Pacific Ocean, by U.S. Flagged vessels, and packed exclusively in Washington and Oregon. This is the only brand that is labeled as "American made," "100% American made," or which otherwise contains labeling indicating it is caught and packed in the United States.[4] It is also the only brand that carries an American flag on the label. Burton Decl., ¶ 8.

American Tuna sells its American Tuna brand products throughout California and the United States. American Tuna's primary retail outlet for its sales is Whole Foods Market. It also sells products on Amazon.com and directly through its website at https://americantuna.com/, as well as a variety of other outlets. While American Tuna brand products are sold in New York, that state is simply one of the many states where a consumer can purchase American Tuna products. During the period of 2017 to 2021, the volume of cans of American Tuna brand albacore sold in New York is less than 10 percent of the total sales for the brand in the United

---

[4] Other brands sold by American Tuna, such as Pole & Line brand, contain pole and line fish caught or packed outside of the United States, in countries such as the Maldives, Thailand, and Costa Rica. Burton Decl., ¶ 9.

States.  To provide another perspective, as of 2022 there are more than 500 Whole Foods stores in the United States.  California has the highest number of Whole Foods stores with 92; New York has only 26 stores.  Burton Decl., ¶ 10.

### 2. Location of American Tuna Witnesses and Personnel

The majority of American Tuna's personnel resides in San Diego, California, and works out of American Tuna's headquarters and only office.  American Tuna has six directors, each of whom is also an officer.  Two of the directors reside and work in San Diego, California.  The remaining four directors reside in the United Kingdom.  Burton Decl., ¶ 11. Other than the officers and directors, all of American Tuna's employees reside in San Diego and work out of the company's office there. Currently, American Tuna has eight such employees working out of San Diego.  Burton Decl., ¶ 12.

All of the directors residing in the U.K. regularly travel to San Diego for company business.  Burton Decl., ¶ 11.  For example, Mr. Burton was last in the U.S. in November 2021, and intends to travel back to San Diego at least three times in 2022.  Burton Decl., ¶ 13.

The American Tuna personnel that are potential witnesses in this case include the following persons, who reside in the locations indicated below:

- John Burton, CEO and President – United Kingdom;
- A. Joel Cardoza, Chief Operating Officer – San Diego, CA;
- Natalie Webster, Vice President – San Diego, CA;
- Phil Upex – Chief Financial Officer, United Kingdom;
- David Burton, Vice President – United Kingdom; and
- Sarah Eames, Technical & Sustainable Sourcing Director – United Kingdom.

Burton Decl., ¶ 14.

All of the strategic decisions regarding the labeling and marketing of American Tuna brand products, as well as the content and design of the American Tuna website, were made out of American Tuna's headquarters in San Diego County.  Burton Decl., ¶ 15.

American Tuna has no physical office or other facility in New York.  Burton Decl., ¶ 16.  No American Tuna employees, officers, or directors reside in New York.  Burton Decl., ¶ 17.  Moreover, American Tuna's employees, officers, and directors do not travel regularly to New York for American Tuna's business.  Burton Decl., ¶ 18.  As explained in Mr. Burton's declaration, due to the fact that American Tuna's business is centered in San Diego, and has nothing to do with the venue where this action was filed, it would be particularly burdensome and disruptive to American Tuna's business operations if this action proceeds in New York.  Burton Decl., ¶ 19.

### 3.    Location of American Tuna Books and Records

American Tuna's business records, consisting of accounting records, vendor agreements, corporate documents, and other records exist in a combination of hard copy and electronic format.  The hard copy documents are located in San Diego, California, either at American Tuna's office or in storage.  Electronic documents and company email communications are backed up on a server at American Tuna's office in San Diego.  Burton Decl., ¶ 20.

American Tuna's vendors that would potentially assist with production of records, are located in California.  The company's IT vendor is located in San Diego, and the company's outside accounting firm is located in Orange County, California.  Burton Decl., ¶ 21.  American Tuna does not have any physical or electronic records stored in New York.  Burton Decl., ¶ 22.

4.      **Location of Third Party Witnesses**

      a.      **Fishermen Witnesses**

Based on the allegations in the Complaint, one of the issues in this litigation will be determining where the fish are caught.  The fish used for American Tuna brand products is primarily caught by the American Albacore Fishing Association ("AAFA").  AAFA is currently composed of approximately 66 members, who are individual boat captains.  Over the last five years, albacore in the American Tuna brand has come from approximately 70 different vessels, the majority of them AAFA members.  Mr. Burton's declaration sets forth the names, vessels, and locations of all of the current 36 AAFA members that supplied fish to the company, all of whom are based in California (including San Diego), Washington, and Oregon.  Burton Decl., ¶ 23.  The non-AAFA members that supply fish also are based on the West Coast of the United States.  None of the vessels or fishermen that supply fish for the American Tuna brand are located in New York or on the East Coast of the United States.  Nor do any of those vessels fish in the Atlantic Ocean or call at ports on the East Coast.  Burton Decl., ¶¶ 25-27.

The captains of the vessels are expected to have information regarding the locations where fish sold to American Tuna was caught, the size and nature of the fishery where they fish in the Pacific Ocean, the pole and line method of catching albacore, the chain of custody of albacore landed on their vessels, and other practices and procedures related to fishing for albacore.  Burton Decl., ¶ 24.

It would be particularly burdensome and disruptive for these fishermen to participate as witnesses in litigation pending in New York.  The fishermen are out at sea for substantial periods of time.  The vast majority of these captains fish the North Pacific albacore tuna season that runs from June to October.  At least a portion of them also fish the North Pacific crab season that runs

from November to June, or the salmon season that occurs in the spring.  And when they are on shore, they are often occupied with a number of other activities to prepare to return fishing. Burton Decl., ¶ 28.

### b.  Packing and Auditing Witnesses

Cans of tuna sold under the American Tuna brand are exclusively packed at two facilities: Pelican Packers in Washington, and Chuck's Seafood in Oregon.  It is likely that personnel from these companies will have discoverable information and may act as witnesses in this litigation.  The most likely witnesses from these companies are the following:

- Russ Edwards, Manager, Pelican Packers – Bellingham, WA; and

- Heath Hamel, Owner, Chuck's Seafood – Charleston, OR.

Burton Decl., ¶ 29.

It is expected that these individuals, as well as potentially other individuals from Pelican Packers and Chuck's Seafood, will have information on the origin, tracing procedures, quality control, canning, and auditing of the tuna canned at their facilities.  All such individuals are expected to reside in Washington or Oregon.  Burton Decl., ¶ 30.

Since American Tuna brand products are certified sustainable by MSC, the company is subject to yearly audits by a third party auditor, typically a company called Intertek.  The Intertek auditor for several of the years at issue in this litigation, Satinder Sanghera, is based in Charleston, Oregon.  It is expected that Ms. Sanghera may have discoverable information regarding the location where American Tuna brand fish are caught, the chain of custody of the fish, and other matters potentially relevant to this litigation.  Burton Decl., ¶ 31.

### c.    Sales Witnesses

In a consumer class action such as this one, testimony and records concerning the pricing of the defendant's products and comparable products are relevant to liability and damages issues. Here, Plaintiff alleges American Tuna's products are more expensive than other products not advertised as made in the United States, including albacore tuna sold by Wild Planet, which like American Tuna, is sold at Whole Foods.  Potential witnesses who currently or formerly worked for Whole Foods include the following persons:

- Lisa Schilling – Austin, TX;

- Brooke Gil – Austin, TX; and

- Lauren Winstead – Austin, TX.

Burton Decl., ¶ 32.

It is expected that these witnesses, as well as other witnesses working from Whole Foods, will testify concerning the prices that American Tuna products and comparable products that were sold at Whole Foods during the period of time covered by the claims in Plaintiff's Complaint.  Burton Decl., ¶ 33.

### III.

### <u>THIS ACTION SHOULD BE TRANSFERRED TO THE</u>

### <u>SOUTHERN DISTRICT OF CALIFORNIA</u>

**A.    <u>Legal Standard</u>**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  "The goal of Section 1404(a) is to prevent waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and

expense." *Wyler-Wittenberg v. MetLife Home Loans, Inc.*, 899 F.Supp.2d 235, 248 (E.D.N.Y. 2012) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)) (internal quotations omitted).

A motion to transfer under 28 U.S.C. § 1404(a) involves a two-step inquiry. *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F.Supp.3d 401, 407 (S.D.N.Y. 2017). First, the court must determine "whether the action could have been brought in the transferee district." *Id.* "Once the defendant overcomes that threshold, courts generally consider nine factors to determine whether transfer is warranted: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice." *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F.Supp.2d 282, 285–86 (S.D.N.Y. 2004); *Enigma Software Grp. USA, LLC*, 260 F.Supp.3d at 407; *Everlast World's Boxing Headquarters Corp v. Ringside, Inc..*, 928 F.Supp.2d at 735, 743 (S.D.N.Y. 2013).

Section 1404(a) "gives district courts wide latitude to decide whether to transfer venue." *Everlast World's Boxing Headquarters Corp.*, 928 F.Supp.2d at 742 (citing *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir.1992)). "[M]otions for transfer lie within the broad discretion of the courts and are determined upon notions of convenience and fairness on a case-by-case basis." *In re Cuyahoga Equip. Corp.*, 980 F.2d at 117.

"[I]n deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue." *Everlast World's Boxing Headquarters Corp.*, 928 F.Supp.2d at 737 n.1.   Accordingly, this Court is not confined by the allegations contained in the four corners of the Complaint, and may consider declarations filed by American Tuna in support of this Motion.

## B.   This Action Could Have Been Brought in the Southern District of California

As a threshold matter, venue is proper in the transferee district, the Southern District of California.   Venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). For venue purposes, American Tuna resides in the Southern District of California because its only office is located in that district, and it would therefore be subject to personal jurisdiction in that district.   28 U.S.C. § 1391(c)(2); 28 U.S.C. § 84(d) (San Diego County is located in the Southern District of California); Com., ¶ 16; Burton Decl., ¶ 4, n.1.

## C.   The 1404(a) Factors Favor Transfer to the Southern District of California

### 1.   Convenience of Witnesses Weighs in Favor of Transfer

"The convenience of non-party witnesses is usually the most important factor to consider in deciding whether to depart from the plaintiff's choice of forum." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F.Supp.2d 164, 168 (E.D.N.Y. 2006) (citing *Viacom Int'l, Inc. v. Melvin Simon Prods.*, 774 F.Supp. 858, 868 (S.D.N.Y. 1991)).   Included in this category of witnesses are a corporate defendant's non-party officers, directors, and employees. *Id.* at 168.

Here, this factor overwhelmingly favors transfer to the Southern District of California. American Tuna's officers and directors reside and work in San Diego or in the U.K.  The U.K.-based employees regularly travel to San Diego for American Tuna business, and are therefore

regularly present in that district.   To the extent non-managerial employees have relevant testimony to this action, they are all located in San Diego.   None of the non-party directors or employees have anything to do with New York.   Burton Decl., ¶¶ 11-14.

Even more compelling is fact is that the vast majority of non-American Tuna witnesses are located in California, Oregon, Washington, and Texas.   The largest and likely most relevant group of witnesses are the AAFA boat captains, who will have information on the exact location and nature of their catches.   The 36 AAFA witnesses are located throughout the West Coast, with the largest concentrations residing in San Diego, California and Crescent City, California. Burton Decl., ¶¶ 23-27.   None of non-AAFA vessels that American Tuna purchases fish from fish in the Atlantic Ocean, call in ports on the East Coast, or have any connection with New York.   Burton Decl., ¶¶ 26-27.

These witnesses will be highly inconvenienced if they are forced to participate in litigation pending in New York.   The fishermen are out at sea for substantial periods of time, often fishing multiple different seasons each year.   While they are on shore, there are also significant responsibilities that these individuals must attend to, ranging from vessel maintenance, to recruitment of crew members, to preparation for the next fishing season.   Burton Decl., ¶ 28.

As discussed above, the witnesses who will have the most information on the packing facilities used by American Tuna, Pelican Packers and Chuck's Seafood, as well as the auditing of the catches, all reside in Washington and Oregon.   To American Tuna's knowledge, none of them have anything to do with New York.   Burton Decl., ¶¶ 29-31.

Finally, the witnesses most knowledgeable about the pricing of American Tuna's products at Whole Foods, its largest outlet for sales, are located in Austin, Texas.   These witness

also will likely be the best situated to provide information on the pricing of what appears to be the closest comparable product, Wild Planet.  Burton Decl., ¶¶ 32-33.

This factor also favors transfer due to the nationwide scope of this class action.  In addition to the New York Subclass, Plaintiff seeks to certify a Nationwide Subclass, which will almost certainly involve testimony and evidence from witnesses disbursed across the county, including in California.  *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F.Supp.2d at 168 (transfer favored when alleged wrongdoing nationwide in scope and involving witnesses disbursed throughout country).

All of the witnesses that reside on the West Coast, which is substantially all of them, are likely to find the Southern District of California to be a more convenient forum than the Southern District of New York.  The evidence also demonstrates that the witnesses who reside outside of the country are likely to find the Southern District of California more convenient because they are regularly present in the district for business.  Accordingly, this factor weighs heavily in favor of transferring this action to the Southern District of California.  *See*, *e.g.*, *Everlast World's Boxing Headquarters Corp.*, 928 F.Supp.2d at 743-44 (granting transfer where "pertinent witnesses [were] overwhelmingly based in or near" the transferee district); *Ritchie Cap. Mgmt., L.L.C. v. U.S. Bank Nat. Ass'n*, No. 14 CIV. 8513 PAE, 2015 WL 1611391, at *4–5 (S.D.N.Y. Apr. 10, 2015) (finding that the convenience of witnesses factor clearly weighed in favor of transfer where a defendant's headquarters were located in the transferee district "and its witnesses are highly likely to reside and work there" and plaintiff was unable "to identify a single witness for whom New York is more convenient").

## 2.    Convenience of the Parties Weighs in Favor of Transfer

In class actions where the lead Plaintiff does not reside in New York, this factor does not weigh in favor of retaining the case in a district court in New York.  *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F.Supp.2d at 169 ("Since none of the lead plaintiffs resides in New York, they cannot claim that New York is the more convenient forum for them.").  Here, Plaintiff is a resident of New Jersey, not New York.  Com., ¶ 15.  Therefore, he has no right to claim that the Southern District of New York is somehow more convenient.  In reality, the selection of the present forum over the District of New Jersey where Plaintiff resides, or the Southern District of California where American Tuna resides, is simply forum shopping.

While Plaintiff will likely claim that the Southern District of New York is more convenient for him since he resides in New Jersey, this argument has been soundly rejected by this Court.  *Inventel Prod. LLC v. Penn LLC*, No. 16-CV-1649(AJN), 2017 WL 818471, at *4 (S.D.N.Y. Feb. 28, 2017) (finding unpersuasive the argument that New York was more convenient than Illinois for a party residing in New Jersey; granting motion to transfer venue); *Freeman v. Hoffmann-La Roche Inc.*, No. 06CIV13497(RMB)(RLE), 2007 WL 895282, at *2 (S.D.N.Y. Mar. 21, 2007) (granting motion to dismiss out of the Southern District of New York when one plaintiff resided in New Jersey, one plaintiff resided in Kansas, and the defendants had their headquarters and principal place of business in New Jersey); *Bernal v. Du Pont De Nemours E.I. and Corp.*, No. 93 Civ. 1639 (PKL), 1993 WL 378790, at *3 (S.D.N.Y. Sept. 24, 1993) (granting motion to transfer to New Jersey, even though the plaintiffs "continually stressed that the Southern District is easily accessible from New Jersey"); *De Jesus v. Nat'l R.R. Passenger Corp.*, 725 F.Supp. 207, 209 (S.D.N.Y. 1989) (granting motion to transfer,

notwithstanding "the proximity of New York to New Jersey," because the case "ha[d] no significant connection" to New York).

With respect to the plaintiff, this factor is also given less importance in nationwide class actions, where the plaintiff is merely acting as a representative of a class "geographically dispersed throughout the United States." *In re Hanger Orthopedic Grp., Inc. Sec. Litig.*, 418 F.Supp.2d at 169 (quoting *Blass v. Cap. Int'l Sec. Grp.*, No. 99-CV-5738 (FB), 2001 WL 301137, at *5 (E.D.N.Y. Mar. 23, 2001)); *see also In re Nematron Corp. Secs. Litig.*, 30 F.Supp.2d 397, 404 (S.D.N.Y. 1998) (residence of class representative in nationwide class action is merely fortuitous).

For American Tuna, it is clear that the Southern District of California would be a more convenient forum.  Its witnesses either reside in San Diego or in the U.K., and its offices, records, and other resources are in San Diego or California.  It has no connection to New York, and proceeding in California would be substantially less disruptive to its business operations.

### 3.    Location of the Evidence Weighs in Favor of Transfer

While the prevalence of electronic discovery may lessen the weight afforded to the location of the evidence factor, to the extent this factor does impact the Court's decision on this Motion, it weighs in favor of transfer.  It is clear that most of the documents to be produced in this action will be produced by American Tuna, or other third party witnesses residing on the West Coast.  American Tuna's business records, both hard copy and electronic, are located in San Diego.  Moreover, the personnel that would assist American Tuna with retrieving those records, such as IT and accounting vendors, are also located in San Diego or California. Accordingly, this factor weighs in favor of transfer to the Southern District of California.  *See*, *e.g.*, *Oleg Cassini, Inc. v. Serta, Inc.*, No. 11 CIV. 8751 PAE, 2012 WL 844284, at *9 (S.D.N.Y.

Mar. 13, 2012) (holding that the location of the evidence factor weighed in favor of transfer where "[m]ost of the . . . business records that will need to be produced in the course of this litigation" were defendant's, and the defendant was headquartered in the transferee district).

### 4.      The Locus of Operative Facts Weighs in Favor of Transfer

The locus of operative facts weighs in favor of transfer to California because all of the decision-making related to American Tuna's labeling, advertising, and website design was made out of its San Diego headquarters.  "To ascertain the locus of operative facts, courts look to 'the site of the events from which the claim arises.'" *Zaltz v. JDATE*, 952 F.Supp.2d 439, 460 (E.D.N.Y. 2013) (citation omitted).  In a nationwide consumer class action based on false advertising claims, the locus of operative facts is normally the location where the allegedly false labeling was designed, or where the product was designed or tested.  *Peroutka v. Yeti Coolers, LLC*, No. 18CV6827AMDCLP, 2020 WL 1283148, at *4 (E.D.N.Y. Mar. 17, 2020); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *9 (E.D.N.Y. Sept. 22, 2015) (citing *CYI, Inc. v. Ja–Ru, Inc.*, 913 F.Supp.2d 16, 21 (S.D.N.Y.2012) (noting, in context of considering motion to transfer venue, that plaintiff "has alleged willfulness which will presumably turn, in large part, on facts regarding the design and development of the accused products and packaging and the knowledge of the employees involved in that process")).

The decision in *Peroutka v. Yeti Coolers, LLC*, 2020 WL 1283148, is instructive.  There, the plaintiff brought a nationwide class action against the manufacturer of a drink cooler, alleging the defendant violated New York's false advertising laws because the cooler did not hold beer bottles as advertised.  *Id.* at *1.  In granting the defendant's motion to transfer venue to Western District of Texas, the Court held that the locus of operative facts was in the transferee

district, because that is where the defendant's corporate headquarters was located, and where the product and its packaging were designed and evaluated. *Id.* at *4.

While the *Peroutka* Court acknowledged the fact that "[t]he sites at which the plaintiffs purchased the [product] and discovered its defects will also be relevant to the plaintiffs' claims," it reasoned that "in the context of nationwide class actions, where the purchase sites are spread across all fifty states, courts identify the producers' headquarters as the 'main locus of operative facts.'" *Id.* (citing *Forsher v. J.M. Smucker Co.*, No. 15CV7180RJDSMG, 2019 WL 235639, at *6 (E.D.N.Y. Jan. 16, 2019) ("[B]ecause this is a putative class action brought on behalf of a California class and a multi-state class, ultimately 'the loci of the operative facts involving Plaintiffs are spread across . . . allegedly, all fifty states,' whereas 'the main locus of operative facts as to Defendant is [its headquarters] in the Northern District of Ohio.") (citation omitted), and *Horanzy v. Vemma Nutrition Co.*, 87 F.Supp.3d 341, 349 (N.D.N.Y. 2015) ("Based on these claims, the locus of many operative facts would be defendants' headquarters in Arizona, with the remaining fact spread out in all states where Vemma has member-distributors (allegedly, all fifty of them).") (citation omitted).

In the present case, the decisions regarding the labeling and advertising of American Tuna brand products, including the statements on the company's website, were made in San Diego, California.  Burton Decl., ¶ 15.  Given the nationwide character of this class action, the location where the products were purchased and the supposed violations discovered is spread across the United States, and does not particularly favor any state.  As in cases like *Peroutka*, this factor this factor weighs in favor of transfer to the Southern District of California.

5.      **The Availability of Process to Compel the Attendance of Unwilling Witnesses Favors Transfer**

Both parties will have the ability to subpoena witnesses from around the country to testify at deposition, and any such depositions could be recorded for use at trial.  See Fed. R. Civ. P. 30, 45.  The most likely unwilling witnesses are likely to be the non-party witnesses identified in Mr. Burton's declaration.  While none of these individuals reside in New York, a substantial number of them do reside in California, and San Diego specifically.   Therefore, this factor favors transfer.

6.      **The Relative Means of the Parties is Neutral**

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered."  *In re Nematron Corp. Sec. Litig.*, 30 F.Supp.2d 397, 405 (S.D.N.Y. 1998).   In this case, however, no notable disparity exists.  American Tuna is a relatively small business with 14 employees operating out of a single office in San Diego.  At this point, little is known about Plaintiff beyond the fact that he is an individual.   Therefore, while there could conceivably be a disparity, there are no facts that indicate it is insignificant.  This factor does not favor either party.

7.      **The Forum's Familiarity with the Governing Law is Neutral**

"Familiarity with the governing law as a factor in determining transfer of venue is generally given little weight in federal courts." *Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F.Supp.2d 474, 479 (S.D.N.Y. 2006) (internal quotation marks and citation omitted).  In the present case, Plaintiff's leading three claims are common law theories of breach of express warranty, negligent misrepresentation, and unjust enrichment.   Since the case involves a nationwide class, a New York district court has no particular expertise in evaluating common

law claims that are likely to be similar in each jurisdiction where the class members reside.  *See*, *e.g.*, *Berman v. Informix Corp.*, 30 F.Supp.2d 653, 659 (S.D.N.Y. 1998) ("Although Berman has alleged common law claims for fraud, negligence and negligent misrepresentation in addition to his federal securities law claims, he does not specify whether these claims fall under the law of California or New York.  Thus, this factor is neutral.").

While Plaintiff also purports to bring three causes of action under New York General Business Law §§ 349 and 350 on behalf of a class of New York residents, those claims are fatally flawed from the outset.  Plaintiff is not a member of the class and therefore cannot represent such the putative class members in those claims.  Fed. R. Civ. P. 23(a); *Bentley v. Verizon Bus. Glob., LLC*, No. 07 CIV. 9590 (DC), 2010 WL 1223575, at *4 (S.D.N.Y. Mar. 31, 2010) ("A class representative must be a member of the class.").  Since these class claims, which are brought only on behalf of the New York Subclass rather than the Nationwide Subclass, should be dismissed as discussed below in Part IV of this Motion, this Court's expertise in applying law related to §§ 349 and 350 is minimal or not relevant.

### 8.     The Plaintiff's Choice of Forum is Neutral or Irrelevant

Plaintiff's choice of the current forum is entitled to little or no weight for several reasons.  First, the traditional weight accorded to the Plaintiff's choice of forum is diminished when the Plaintiff does not reside in the forum.  *Inventel Prod. LLC v. Penn LLC*, No. 16-CV-1649(AJN), 2017 WL 818471, at *3 (S.D.N.Y. Feb. 28, 2017); *Pausch Medical GmBH v. Pausch LLC*, No. 14-cv-1945 (PAC), 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015) ("[S]ince New York is not Plaintiff's home district, little weight is afforded to its choice to litigate in this District."); *Wilson v. DirectBuy, Inc.*, 821 F.Supp.2d 510, 516 (D. Conn. 2011) ("When plaintiffs choose a forum that is not any plaintiff's home forum, . . . that choice of forum is accorded considerably less

weight."). "This principle applies 'even when the plaintiff's home district is adjacent to the forum.'" *Inventel Prod. LLC*, 2017 WL 818471, at *3 (quoting *Levy v. Welsh*, No. 12-CV-2056 (DLI)(VMS), 2013 WL 1149152, at *5 (E.D.N.Y. Mar. 19, 2013)).

Secondly, the Second Circuit is clear that "the plaintiff's choice of forum is a less significant consideration in a . . . putative[] class action than in an individual action." *In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995). Here, a relatively small percentage of the putative class members will be located in New York. Less than 10% of the sales of American Tuna brand products occurs in New York, and the state contains a mere 21 of the country's 486 Whole Foods stores. Burton Decl., ¶ 10. Given that a much larger group of class members are dispersed throughout the country and have nothing to do with New York, it is simple to see why Plaintiff's decision to file this action in this forum is of little importance.

"The core determination under Section 1404(a) is the center of gravity of the litigation." *Armstrong v. Costco Wholesale Corp. & Nice-Pak Prod., Inc.*, 234 F.Supp.3d 367, 371 (E.D.N.Y. 2017). The "center of gravity" of this litigation is California.

## IV.

## PLAINTIFF'S CLAIMS BROUGHT ON BEHALF OF THE NEW YORK SUBCLASS, FOR NEGLIGENT MISREPRESENTATION, AND FOR UNJUST ENRICHMENT SHOULD BE DISMISSED PURSUANT TO FRCP 12(B)(6)

### A.     The Claims of the New York Subclass Must Be Dismissed, Because Plaintiff is Not a Member of the Class

Plaintiff's claims brought on behalf of the New York Subclass should be dismissed for the simple reason that Plaintiff is not a member of the class. It is evident from the face of the Complaint that Plaintiff "resides in Bergen County, NJ," but seeks to bring claims on behalf of

the New York Subclass, which is limited to "persons residing in New York State." Com., ¶¶ 15, 34. Such representation is an impossibility, and therefore all claims of the New York Subclass should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

"A class representative must be a member of the class." *Bentley v. Verizon Bus. Glob., LLC*, No. 07 CIV. 9590 (DC), 2010 WL 1223575, at *4 (S.D.N.Y. Mar. 31, 2010). Fed. R. Civ. P. 23(a) ("*One or more members* of a class may sue or be sued as representative parties . . . ." (emphasis added)). "To have standing to sue as a class representative it is essential that a plaintiff . . . be a part of that class . . . ." *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974). *See also* Wright & Miller, Fed. Prac. & Proc. Civ., The Representatives Must Be Members of the Class, 7A § 1761 (4th ed.) ("courts have held that a representative who is not a member of the class cannot adequately represent its members and the action must be dismissed"); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 255 (E.D. Pa. 2013) (denying motion for class certification in part on basis that the Plaintiff, a resident of Pennsylvania, was not a member of the proposed class of non-Pennsylvanians).

In addition, a class representative must have claims that are "typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement is met when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993)); accord *In re WorldCom, Inc.*, 358 B.R. 585, 597 (Bankr. S.D.N.Y. 2006). "A determination ***that the named plaintiff is not a member of the class*** or that she fails to meet the typicality requirement is dispositive, and in that event the court need not consider the other class certification requirements." *Bentley*, 2010 WL 1223575, at *4 (emphasis added) (citing *In re*

*WorldCom, Inc.*, 358 B.R. at 595 and *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 63 (S.D.N.Y. 2006)).

Here, the simple, yet critical requirement of membership in the class does not exist. Plaintiff cannot maintain representative claims on behalf of a class of which he is not a member, and therefore all claims of the New York Subclass must be dismissed.

**B.**   **Plaintiff's Claim for Negligent Misrepresentation Must Be Dismissed Because There is No Special Relationship**

Plaintiff's claim for negligent misrepresentation must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), because Plaintiff has failed to plead any special relationship between himself or other class members, and American Tuna.  To state a claim for negligent misrepresentation under New York law a plaintiff must allege that:

> (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment.

*Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114 (2d Cir. 2012) (internal quotation marks omitted).

Negligent misrepresentation claims are subject to the heightened pleading standard under Rule 9(b).  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 583 (2d Cir. 2005) (stating negligent misrepresentation claims under New York law "must be pled in accordance with the specificity criteria of Rule 9(b)").  Under the "duty" element, "New York strictly limits negligent misrepresentation claims to situations involving 'actual privity of contract between the parties or a relationship so close as to approach that of privity.'" *Anschutz Corp.*, 690 F.3d at 114

(quoting *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 271 (2d Cir. 1993)). "[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified." *Kimmell v. Schaefer*, 89 N.Y.2d 257, 263, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996).

In the commercial context, a closer degree of trust between the parties than that of the ordinary buyer and seller is required to establish the "existence of . . . a special relationship . . . [capable of] giv[ing] rise to an exceptional duty regarding commercial speech and justifiable reliance on such speech." *Id.* at 264.  *Kimmell* directs courts to examine the following factors to determine whether a special relationship, and a duty to provide correct information, exists: "whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose."  *Id.*; *see also Suez Equity Inv'rs, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (citing *Kimmell* for relevant factors).

A plaintiff bringing a class action against a food product manufacturer based on labeling or other advertising generally cannot maintain a negligent misrepresentation claim against the seller, as there is no special relationship.  *Segedie v. Hain Celestial Grp., Inc.*, No. 14–CV–5029, 2015 WL 2168374, at *1, 14 (S.D.N.Y. May 7, 2015) (dismissing negligent misrepresentation claim under New York law brought by purchasers of allegedly misbranded food, body care and home care products because plaintiffs failed to plead any cognizable special relationship with defendant manufacturer, stating defendant's "obligation to label products truthfully does not arise from any special relationship" and "[t]here is nothing approximating privity between the

parties"); *Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826 MKB, 2015 WL 5579872, at *23–24 (E.D.N.Y. Sept. 22, 2015) (dismissing negligent misrepresentation claim on 12(b)(6) motion because relationship between manufacturer selling Greek yogurt to consumer was not sufficient to satisfy special relationship requirement).

Here, Plaintiff's Complaint fails to allege any facts that would establish a special relationship with American Tuna.  Instead, it simply alleges this theory in the most unspecific and generic terms, claiming American Tuna and its agents "made false representations, concealments, and nondisclosures to Plaintiff and members of the Class."  Com., ¶¶ 53-58.  This is insufficient to allege a claim for negligent misrepresentation under New York law, particularly given the heightened pleading requirement of Rule 9(b).  This claim must be dismissed.

## C.    **Plaintiff's Unjust Enrichment Claim Must Be Dismissed**

Plaintiff's unjust enrichment claim is merely duplicative of its other claims, and fails to satisfy the necessary pleading prerequisites.  Under New York law, "unjust enrichment is not a catchall cause of action to be used when others fail . . . [and][a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790, 944 N.Y.S.2d 732, 967 N.E.2d 1177 (2012). Rather, unjust enrichment is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Id.*

In a class action complaint, dismissal of an unjust enrichment cause of action is appropriate when it serves no independent purpose and simply duplicates other causes of action. *Weisblum v. Prophase Labs, Inc.*, No. 14–CV–3587, 2015 WL 738112, at *11 (S.D.N.Y. Feb. 20, 2015) (dismissing plaintiff's unjust enrichment claim as duplicative of negligent

misrepresentation and fraud claims); *Ebin v. Kangadis Food Inc.*, No. 13–CV–2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013) (dismissing unjust enrichment claim as duplicative of, *inter alia*, negligent misrepresentation claim); *Stoltz*, 2015 WL 5579872, at *26-27 (same).

Here, the Complaint is clear that New York law should apply to all claims for unjust enrichment.  Com., ¶¶ 61-62.  However, the Complaint fails to allege any new facts or reasons why Plaintiff's other tort and contract theories would not be sufficient, and merely duplicates those theories under this catchall category.  As such, this claim must be dismissed.

### V.

### <u>CONCLUSION</u>

Taken together, the factors under § 1404(a) weigh heavily in favor of transferring venue to the Southern District of California.  In addition, the claims of the New York Subclass, for negligent misrepresentation, and for unjust enrichment must be dismissed under Rule 12(b)(6).

Dated:  January 10, 2022    Respectfully submitted,

        RIVKIN RADLER LLP

        DUCKOR METZGER & WYNNE, APLC

By: /s/  *Brian L. Bank*
     Brian L. Bank (BB 5995)
     Brian.Bank@rivkin.com
     926 RXR Plaza
     Uniondale, New York 11556-0926
     Telephone: (516) 357-3000
     Facsimile: (516) 357-3333

     William P. Keith (Cal. Bar No. 270587)
     *Pro Hac Vice pending*
     keith@dsmw.com
     101 W. Broadway, Suite 1700
     San Diego, CA 92101
     Telephone: (619) 209-3000
     Facsimile: (619) 209-3043