```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/1/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY CRAIG,

                Plaintiff,

-against-

AMERICAN TUNA, INC. et al.,

                Defendants.

**OPINION AND ORDER ON MOTION TO TRANSFER**
21-CV-9125 (AJN)(KHP)

**KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

    Defendant American Tuna, Inc. ("American Tuna") has moved to transfer this action to the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1404(a) and Federal Rule of Civil Procedure ("FRCP") 12(b)(3) and to dismiss certain claims under FRCP 12(b)(6).[1]  (ECF No. 25.)  For the reasons set forth below, Defendant's motion to transfer is granted.  Because the case is transferring, the Court does not rule on the motion for partial dismissal but notes that Plaintiff agrees to withdraw his unjust enrichment claim and claim under the Magnuson-Moss Act 15 U.S.C. § 2301.

---

[1] After American Tuna moved to transfer venue and dismiss claims (ECF No. 11), Plaintiff filed an amended complaint on January 31, 2022, adding Defendant World Wise Foods, Ltd. (hereinafter, "WWF"), American Tuna's parent company, located in the United Kingdom, and more factual allegations to further support his claims. (ECF No. 21.)  American Tuna then renewed its motion.  (ECF No. 25.)  WWF has not been served as of the date of this decision.  However, it has submitted a declaration in connection with American Tuna's motion stating that it objects to jurisdiction in New York and consents to jurisdiction in the Southern District of California.  (ECF No. 28.)

**BACKGROUND**[2]

Plaintiff, Jeffrey Craig, a resident of New Jersey, purchased American Tuna's canned tuna fish from Whole Foods locations in New York State including in Manhattan and Westchester County. (First Amended Complaint ("FAC") ¶ 24, ECF No. 21.) Plaintiff alleges that he and other consumers were misled to pay a premium for what they believed to be "top-quality, locally-sourced tuna caught in American waters and processed in American factories." (FAC ¶¶ 2, 4.) But, according to Plaintiff, the tuna is not in fact caught in America and much of the tuna is canned in Thailand, Costa Rica, Vietnam and other countries. (FAC ¶¶ 5-6, 8.) Plaintiff further alleges that Defendants' misleading tactics are present on its website and social media platforms, as well as on the labels of the cans of tuna sold at Whole Foods. (FAC ¶¶ 9, 30.) Thus, Plaintiff accuses American Tuna of false labeling and marketing of its products.

American Tuna resides in San Diego, California, where it's offices and the majority of its employees are located. (Burton Decl. ¶¶ 3-4, 11.) It has no offices or personnel in New York. (*Id*. ¶¶ 16-17.) American Tuna's records, both hard copy and digital, are located in San Diego. (*Id.* ¶ 20.) Its vendors that would assist with production of records in this litigation are mostly located in California. (*Id*. ¶ 21.) American Tuna has identified a number of employee and officer witnesses who would testify in its defense who are located in either San Diego or the United Kingdom. (*Id*. ¶ 14.) The decisions regarding the labeling and marketing of American

---

[2] For the purposes of this opinion, the Court assumes the truth of the allegations in the amended pleading. The Court also cites to two declarations of John Burton, one as the CEO of American Tuna, and the other as the CEO of WWF, which may be considered in connection with the motion to transfer. (ECF Nos. 27-28, 33.) The declarations identify witnesses and describe the corporate structure of Defendants and the location of key personnel and vendors.

Tuna products and the content of its website were made out of American Tuna's San Diego headquarters. (*Id*. ¶ 15.)

Defendant WWF, the majority share owner of American Tuna, is a United Kingdom corporation. (Burton WWF Decl. ¶ 3.) It does not have offices or employees in New York. (*Id*. ¶¶ 4-5.) It consents to jurisdiction in the Southern District of California where it's executives frequently travel for business. (*Id*. ¶¶ 11-12.) It objects to jurisdiction in New York.

The tuna sold under the American Tuna brand is caught in the Pacific Ocean by approximately 70 U.S. Flagged vessels based out of California (including San Diego), Oregon and Washington. (Burton Decl. ¶¶ 8, 23, 25.) It is canned on the West Coast in the states of Washington and Oregon. (*Id*. ¶¶ 8, 29.) American Tuna does not maintain records of where specifically in the Pacific Ocean the tuna is caught. Rather, the fishermen who catch the tuna each maintain records as to the locations where the tuna was caught, the size and nature of the fishery where they fish in the Pacific Ocean, the pole and line method of catching the fish, and the chain of custody of tuna landed on their vessels to the canneries. (*Id*. ¶ 24.) American Tuna states that it expects to call fishermen and a representative from the American Albacore Fishing Association as witnesses regarding where the fish is caught and rules concerning the recordkeeping regarding the same. These witnesses are located in San Diego or on the West Coast. (*Id*. ¶¶ 23-26.) American Tuna also states it would call witnesses from its packers who are located on the West Coast. (*Id*. ¶29.) These witnesses would have information about the origin, tracing procedures, canning and auditing of tuna canned at their facilities. (*Id*.)

Whole Foods is American Tuna's primary retail outlet. (FAC ¶ 23.) New York State has the third most Whole Foods locations in the nation (26 stores). (*Id.*; Burton Decl. ¶ 10.) Ten

percent of American Tuna's sales come from New York. (FAC ¶ 23.) However, California has the highest number of Whole Food stores (92 stores). (Burton Decl. ¶ 10.) Whole Foods is headquartered in Austin, Texas. (*Id*. ¶ 32.) American Tuna expects to call witnesses from Whole Foods who can testify about pricing of American Tuna products as compared to its competitors. (*Id*. ¶ 33.)

Plaintiff seeks to represent a nationwide class of "all persons residing in the United States and its territories who purchased American Tuna Products during the applicable limitations period primarily for personal, family, or household purposes, and not for resale." (FAC ¶ 39.) The nationwide claims are premised on various tort claims including breach of express warranty, negligent misrepresentation, and unjust enrichment and would implicate the relevant laws of each state of purported class members. (FAC ¶¶ 51-73.) Plaintiff also seeks to represent a New York subclass of all consumers who purchased American Tuna products in New York. (FAC ¶ 39.) The state claims include the torts mentioned above as well as alleged violations of New York General Business Law §§ 349 & 350 for deceptive trade practices. (FAC ¶¶ 74- 98.)

## DISCUSSION

### A. Legal Standard

When a party has moved to transfer and to dismiss certain claims, the court first considers the transfer motion. *Peroutka v. Yeti Coolers, LLC*, 2020 WL 1283148, at *2 (E.D.N.Y. Mar. 17, 2020). If the court determines that transfer is appropriate, it should defer to the transferee court with respect to the dispositive motion. *Id*.

Transfer of venue to another district is permitted "for the convenience of parties and witnesses" and "in the interest of justice" so long as the case might have originally been brought in the transferee district. 28 U.S.C. § 1404(a). Courts have broad discretion to determine whether to transfer venue based on notions of convenience and fairness with the goal of minimizing costs, preventing waste of time and energy, and protecting litigants, witnesses and the public against "unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964); *see also In Re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992); *Everlast World's Boxing Headquarters Corp v. Ringside, Inc.*, 928 F. Supp. 2d 735, 742 (S.D.N.Y. 2013).

A motion to transfer under 28 U.S.C. § 1404(a) involves a two-step inquiry. *Enigma Software Grp. USA, LLC v. Malwarebytes Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017). First, the court must determine whether the action could have been brought in the transferee district. *Id.* Then, the court must consider factors including,

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the party.

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-107 (2d Cir. 2006). Courts also may consider the comparative familiarity of each district with the governing law, judicial economy and the interests of justice. *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 743.

The moving party bears the burden of demonstrating by clear and convincing evidence that the transfer is justified, but the district court retains "considerable discretion" based on the totality of circumstances. *Forjone v. California*, 425 F. App'x. 73, 74 (2d Cir. 2011); *New York*

*Marine and General Ins. Co. v. Lafarge North America, Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Xiu Feng Li v. Hock*, 371 F. App'x 171, 175 (2d Cir. 2010). "[I]n deciding a motion to transfer venue, the Court may consider factual submissions, including declarations, by defendants, who have the burden to justify a change of venue." *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 737 n.1.

### B. Application

To start, the Court finds that this action could have been brought in the United States District Court for the Southern District of California. "A case might have been brought in another forum if at the time the suit was brought, the defendants were subject to jurisdiction and venue was proper in that district." *Alpha Indus., Inc. v. Alpha Clothing Co. LLC*, 2021 WL 2688722, at *3 (S.D.N.Y. June 30, 2021) (quoting *Smart Skins LLC v. Microsoft Corp.*, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015)) (internal quotation marks omitted). Here, Defendant American Tuna is a California corporation headquartered in San Diego, California, and Defendant WWF, a foreign corporation, is subject to suit in any judicial district. *See* 28 U.S.C. § 1391(c)(3). Furthermore, WWF consents to the jurisdiction in the Southern District of California. (Burton WWF Decl. ¶ 12.) Accordingly, this action could have been brought in the proposed transferee district.

Second, the weight of the factors favor transfer. While it is true that a plaintiff's choice of forum is entitled to deference, the Second Circuit has indicated that the deference is less when the plaintiff is seeking to represent a nationwide class action. *Gross v. British Broad. Corp.*, 386 F.3d 224, 230 (2d Cir. 2004); *Gilstrap v. Radianz Ltd.*, 233 F. App'x 83, 85 (2d Cir. 2007). This presumption of deference is further undermined when there is little connection

between the chosen forum and the issues in the case. *Peroutka*, 2020 WL 1283148, *3. Here, Plaintiff is a resident of New Jersey who seeks to represent a nationwide class. Although he bought the tuna in New York, the product is available at stores nationwide and on American Tuna's website. At oral argument Plaintiff's counsel conceded he could have purchased the tuna in New Jersey where he lives. Besides the purchase location, there is little connection to New York. Thus, Plaintiff's choice of forum deserves minimal deference. *See Inventel Products LLC v. Penn LLC*, 2017 WL 818471 (S.D.N.Y. Feb. 28, 2017) (New Jersey-based plaintiff's proximity to New York did not justify affording greater deference to its choice of New York as a forum).

The convenience of witnesses is one of the most important factors in the analysis. *Nuss v. Guardian Life Ins. Co. of Am.*, 2021 WL 1791593, at *4 (S.D.N.Y. May 5, 2021). American Tuna has submitted an affidavit setting forth the names and locations of various witnesses it would seek to call in this case and the subject matter of their testimony. None of the witnesses are located in New York. American Tuna's employees are located primarily in San Diego, California. (Burton Decl. ¶ 12.) Additionally, the company witnesses who may offer testimony regarding the strategic decisions concerning the labeling and marketing of American Tuna brand products, as well as the content and design of the American Tuna website, are in San Diego. (*Id*. ¶ 15.) American Tuna has five officers and directors, four of whom are located in the U.K. and one of whom is located in San Diego. (*Id*. ¶ 11.) The U.K. officers and directors are frequently in San Diego for company business. (*Id*.) American Tuna also expects to call fishermen from whom it purchased its tuna to produce their records and testify about where they caught the tuna. These witnesses are located in San Diego, other California locations, and

in Washington and Oregon.  (*Id.*¶¶ 23, 25.)  Finally, American Tuna expects to call witnesses from its canneries who are located in Washington and Oregon, from the Marine Stewardship Council in Oregon, and from Whole Foods who are located in Austin, Texas.  (*Id*. ¶¶ 7, 29-32). In contrast, there are no witnesses in New York.  While it is true that many witnesses will need to travel for purposes of this litigation, at least some witnesses are located in San Diego.  Further, many of the witnesses who need to travel are located on the West Coast such that travel will be more convenient to San Diego than to New York insofar as the travel will be in the same time zone and can be by car or plane.  On balance, the convenience of witnesses factor tips in favor of transfer.  *See, e.g.*, *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 743-44 (granting transfer where "pertinent witnesses [were] overwhelmingly based in or near" the transferee district).

As to the second factor, the convenience of parties, this factor also weighs in favor of transfer.  When analyzing this factor, "courts generally look to the parties' principal places of business, the location of their offices, or their residences."  *Nuss*, 2021 WL 1791593, at *5 (citing *Travelers Prop. Cas. Co. of America v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366, 376 (W.D.N.Y. 2018)).  Transfer is favored when it "would increase convenience to the moving party without generally increasing the inconvenience to the non-movant" and is neutral when merely shifting the burden to the non-movant. *Id.* (quoting *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 399 (S.D.N.Y. 2014)).

Here, no party resides in New York.  Plaintiff resides in New Jersey.  American Tuna resides in San Diego.  WWF, though not yet served, is a U.K. company.  Thus, San Diego has more connections to the parties than New York, especially insofar as the WWF witnesses are

frequently in San Diego for business. The Court acknowledges that traveling to New York is likelier easier for Plaintiff, but his proximity to New York does not weigh against transfer on this factor. *See Inventel Prod. LLC*, 2017 WL 818471, at *4 (finding unpersuasive the argument that New York was more convenient to Plaintiff because its witness lived in New Jersey and were closer to New York than the proposed transferee district, Illinois).

The third factor--the location of relevant documents and the relative ease of access to sources of proof—also weighs slightly in favor of transfer. Courts have recognized that the location of documents is less significant when documents are electronic or can be digitized and exchanged electronically. *Nuss*, 2021 WL 1791593, at *5. For this reason, this factor is often neutral "absent a showing of particular relevance to the case." *Id.* American Tuna's records are located in San Diego. More significantly, it appears that the records of up to 70 different fishing vessels will be relevant. Those records may not be fully electronic and are located in San Diego, other locations in California and in Washington and Oregon. To the extent there may be numerous non-party sources of records that need to be collected and to the extent these records are in hard copy, it will likely be easier to collect them from San Diego.

As to the fourth factor, the locus of the operative facts, weighs in favor of transfer too. "The location of the operative events is a primary factor in determining a § 1404(a) motion to transfer." *Alpha Indus., Inc.*, 2021 WL 2688722, at *6 (quoting *Everlast World's Boxing Headquarters Corp.*, 928 F. Supp. 2d at 745). "To determine the locus of operative facts, the court should look to the site of the events from which the claim arises." *Nuss*, 2021 WL 1791593, at *7 (quoting *Tritt v. Automatic Data Processing, Inc. Long Term Disability Plan Adm'r*, 2008 WL 2228841, at *2 (D. Conn. May 27, 2008)). Here, the key facts concern the

corporate decision-making about the allegedly false advertising and deceptive advertising practices, the sourcing of the tuna, and decisions about pricing. All of this conduct took place in San Diego. Some of the fishing vessels from which the tuna was purchased are based in San Diego. Other conduct took place on the West Coast. The only relevant fact relating to New York is that Plaintiff purchased his cans of tuna fish in New York. But given that this is a putative nationwide class action involving the purchase of tuna across the United States, this fact is of little importance in determining the locus of operative facts. *See McGraw-Hill Cos. Inc. v. Jones*, 2014 WL 988607, at *6 (S.D.N.Y. Mar. 12, 2014) ("[Where] items are sold in more than one district — and particularly where the products have been sold nationwide — a number of decisions have expressed skepticism that the location of these sales determines the locus of operative facts"). In sum, San Diego has far greater connection to the key factual contentions than New York. *Peroutka*, 2020 WL 1283148, at *4 (holding in a proposed nationwide class action litigation that the locus of operative facts was in the transferee district, because that is where the defendant's corporate headquarters was located, and where the product and its packaging were designed and evaluated); *Glass v. S&M NuTec, LLC*, 456 F. Supp.2d 498, 503 (S.D.N.Y. 2006) (in nationwide consumer class action brought by plaintiffs who did not reside in New York, finding the locus of operative facts was Kansas City are where the dog treats at issue were designed, marketed and manufactured).

The availability of process to compel the attendance of unwilling witnesses factor tips slightly in favor of transfer. Under Federal Rule of Civil Procedure 45(c)(1)(A), a district court generally cannot issue a subpoena that would compel a nonparty witness to travel more than 100 miles or out of the state. Fed. R. Civ. P. 45(c)(1)(A). Here, there are non-party witnesses in

San Diego, other California cities, Washington, Oregon, and Texas. No non-party witnesses who live within 100 miles of the Southern District of New York have been identified by either party. While it is unclear whether the fishermen will be unwilling witnesses, American Tuna has identified several who it would seek to call as witnesses and from whom it would seek documents who are within the subpoena power of the proposed transferee court. Both parties could use that district's subpoena power to collect relevant documents and obtain testimony. This court cannot compel any of the identified non-party witnesses to appear and produce documents because all are more than 100 miles away. Plaintiff's argument that the parties will be able to record testimony at depositions and play the recordings during trial under Federal Rule of Civil Procedure 32(a)(4)(B) is unpersuasive because it does not address the focus of this factor, which is the availability of process.

The next factor is the relative means of the parties. "A party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." *Nuss*, 2021 WL 1791593, at *8 (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 331 (E.D.N.Y. 2006)). Neither party has produced any documentation showing a financial hardship caused by litigating in this District as compared to the Southern District of California and vice versa. Plaintiff argued at oral argument that it will be cheaper for him to drive to New York to litigate than to travel to San Diego and that American Tuna and WWF are corporations with greater resources. However, Plaintiff has not offered evidence that he has inadequate means to travel to San Diego to testify. Further, the parties may agree to the video deposition of Plaintiff to reduce travel expense. Absent greater proof of inadequate means, this factor does not militate against

transfer and is neutral.  See *Peroutka*, 2020 WL 1283148, at *5 (finding relative means of parties factor to be neutral because plaintiff offered no evidence of his financial condition).

The comparative familiarity of each district with the governing law is not a significant factor in this case. "When undertaking a § 1404(a) analysis of different federal district courts, the putative forum's familiarity with the governing law is 'one of the least important factors in determining a motion to transfer.'"  *Alpha Indus.*, 2021 WL 2688722, at *11 (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004)).  "To the extent that a case raises state law issues, 'then the greater familiarity of the federal court sitting in that forum militates somewhat in favor of transfer.'"  *Id.* (quoting *Dostana Enterprises LLC v. Fed. Express Corp.*, 2000 WL 1170134, at *6 (S.D.N.Y. Aug. 16, 2000)).  Nonetheless, this factor is of less importance in well-settled areas of the law.  *Hamilton v. Accu-Tek*, 47 F. Supp. 2d 330, 347 (E.D.N.Y. 1999).  Here, Plaintiff alleges multiple common law causes of action, including nationwide claims of breach of express warranty, negligent misrepresentation, and unjust enrichment, which implicate the state laws of many jurisdictions.  Neither New York nor California courts enjoy advantage over the other in analyzing and applying law from a variety of states yet to be ascertained.  See *Glass*, 456 F. Supp.2d at 504.  To the extent Plaintiff seeks to represent a New York subclass bringing claims under New York law, this district will have an advantage over the transferee district.   On balance, this factor is neutral.

Finally, when considering judicial economy and the interests of justice, courts have often assessed these factors by examining docket congestion.  *See, e.g., City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, at *7 (E.D.N.Y. Aug. 23, 2019).  The submissions do not analyze the issue of docket congestion.  Accordingly, this factor is neutral.

In sum, when considering all of the factors, including those courts hold most important in the transfer decision, American Tuna has met its burden in showing that transfer is warranted.  Not only does San Diego have far greater connections to the key facts and witnesses than New York, but transfer of this case to San Diego will reduce travel costs for some witnesses and be more convenient for more of them than if this case remained in New York.

## CONCLUSION

For the reasons stated above, Defendants' motion to transfer this action to the United States District Court for the Southern District of California is GRANTED.  The Clerk of Court is respectfully directed to transfer this case in its entirety.  The Court defers to the Southern District of California with respect to the aspect of the motion that seeks dismissal of certain claims.

**SO ORDERED.**

Dated:   April 1, 2022
         New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge